UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SOLODYN (MINOCYCLINE HYDROCHLORIDE) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>**ALL ACTIONS** | MDL No. 2503<br>Civil Action No. 1:14-md-02503-DJC<br><br>**PUBLIC VERSION** |

**DEFENDANTS MEDICIS PHARMACEUTICAL CORP. AND
IMPAX LABORATORIES, INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF
JOHN R. THOMAS AND PETER HARDIGAN**

## TABLE OF CONTENTS

                                                                                    **Page(s)**

INTRODUCTION ........................................................................................................................1

ARGUMENT.............................................................................................................................2

I.     THOMAS' UNTIMELY NON-INFRINGEMENT OPINIONS FOR THE '838
       PATENT SHOULD BE EXCLUDED ...............................................................................2

II.    THOMAS' OPINIONS ON VALIDITY AND INFRINGEMENT ARE
       INADMISSIBLE ...............................................................................................................5

III.   THOMAS' REMAINING OPINIONS ON VALIDITY AND INFRINGEMENT
       MERELY PARROT DR. KIBBE'S AND SHOULD BE EXCLUDED ..............................8

IV.    THOMAS' OPINIONS ON INEQUITABLE CONDUCT ARE INADMISSIBLE ..........9

V.     THOMAS' OPINIONS ON MEDICIS' LIKELIHOOD OF SUCCESS IN THE
       PATENT LITIGATION ARE INADMISSIBLE ................................................................9

VI.    THOMAS' OPINIONS REGARDING THE LITIGATION TIMELINE FOR THE
       HYPOTHETICAL MEDICIS-IMPAX PATENT LITIGATION SHOULD BE
       EXCLUDED AS BASED ON UNSUPPORTED, AND UNSUPPORTABLE,
       SPECULATION .............................................................................................................13

VII.   HARDIGAN'S CALCULATION OF LITIGATION EXPENSES BASED ON
       THE THOMAS LITIGATION TIMELINE SHOULD BE EXCLUDED .........................19

CONCLUSION………………………………………………………………………...........................20

## TABLE OF AUTHORITIES

### CASES

*Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*,
    No. 09-40089-FDS, 2014 WL 7330777 (D. Mass. Dec. 19, 2014)...................................10

*Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*,
    No. CV 07-8108 FMO (SHx), 2014 WL 12586105 (C.D. Cal. Jan. 3, 2014).............10, 13

*Alves v. Mazda Motor of America, Inc.*,
    448 F. Supp. 2d 285 (D. Mass. 2006) ......................................................................3, 4

*ART+COM Innovationpool GmbH v. Google Inc.*,
    155 F. Supp. 3d 489 (D. Del. 2016)...............................................................................11

*Bartlett v. Mutual Pharmaceutical Co.*,
    742 F. Supp. 2d 182 (D.N.H. 2010).................................................................................17

*Carlucci v. CNH America LLC*,
    No. 10-12205-DPW, 2012 WL 4094347 (D. Mass. Sept. 14, 2012)...................................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).....................................................................................................1, 5

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,
    285 F.3d 609 (7th Cir. 2002) .........................................................................................8

*Equal Employment Opportunity Commission v. Texas Roadhouse, Inc.*,
    215 F. Supp. 3d 140 (D. Mass. 2016) ......................................................................15, 16

*Hypertherm, Inc. v. American Torch Tip Co.*,
    No. 05-cv-373-JD, 2009 WL 530064 (D.N.H. Feb. 27, 2009).........................................6

*Joyal Products Inc. v. Johnson Electronics North America, Inc.*,
    No. 04-5172 (JAP), 2009 WL 512156 (D.N.J. Feb. 27, 2009), *aff'd*, 335 F. App'x
    48 (Fed. Cir. 2009).........................................................................................................9

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................................1

*Lohns v. Level 3 Communications, Inc.*,
    272 F.3d 49 (1st Cir. 2000)..............................................................................................3

*Martinez-Morales v. Victaulic Co.*,
    No. 11-1660 (MEL), 2013 WL 2443871 (D.P.R. June 5, 2013) .......................................5

*McGovern v. Brigham & Women's Hospital*,
    584 F. Supp. 2d 418 (D. Mass. 2008)......................................................................1, 15

*Radio Systems Corp. v. Lalor,*
    No. C10-828RSL, 2014 WL 4626298 (W.D. Wash. Sept. 12, 2014)................................8

*In re Rezulin Products Liability Litigation,*
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..............................................................................17

*Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D.,*
    456 F.3d 272 (1st Cir. 2006)............................................................................................3

*Se-Kure Controls, Inc. v. Diam USA, Inc.,* No. 06 C,
    4857, 2009 WL 77463 (N.D. Ill. Jan. 9, 2009)...............................................................11

*Smith & Nephew, Inc. v. Interlace Medical, Inc.,*
    955 F. Supp. 2d 69 (D. Mass. 2013)...............................................................................10

*Smith v. Dorchester Real Estate, Inc.,*
    732 F.3d 51 (1st Cir. 2013).............................................................................................x1

*Sundance, Inc. v. Demonte Fabricating Ltd.,*
    550 F.3d 1356 (Fed. Cir. 2008)...................................................................................6, 12

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
    No. C-09-01201 RMW, 2011 WL 11709387 (N.D. Cal. Aug. 19, 2011)..........................7

*Therasense, Inc. v. Becton, Dickinson & Co.,*
    649 F.3d 1276 (Fed. Cir. 2011)........................................................................................9

*Toro Co. v. MTD Products Inc.,*
    No. 10-756 (JNE/TNL), 2013 WL 12156671 (D. Minn. Feb. 5, 2013)...........................13

*Town of Wolfeboro v. Wright-Pierce, Inc.,*
    No. 12-cv-130-JD, 2014 WL 1806843 (D.N.H. Apr. 2, 2014)..........................................8

*United States v. Frabizio,*
    445 F. Supp. 2d 152 (D. Mass. 2006)...........................................................................15

*United States v. Jacques,*
    784 F. Supp. 2d 59 (D. Mass. 2011)..............................................................................12

*United States v. Zajanckauskas,*
    441 F.3d 32 (1st Cir. 2006)............................................................................................19

*United States v. Zolot,*
    968 F. Supp. 2d 411 (D. Mass. 2013)..............................................................................8

## RULES

Fed. R. Civ. P. 26...........................................................................................................2, 3

Fed. R. Civ. P. 37 ...................................................................................................................3, 12

Fed. R. Evid. 702 ...................................................................................................................1, 6

Fed. R. Evid. 704 ...................................................................................................................13

## INTRODUCTION

Plaintiffs have designated John Thomas, a law school professor with no relevant experience, as an expert witness to opine on a wide-range of matters regarding Medicis' Solodyn patents and the timeline for hypothetical litigation between Impax and Medicis related to one of those patents—U.S. Patent No. 5,908,838 (the "'838 Patent").   Thomas does not have the requisite skill, knowledge, or experience to render many of the opinions he offers, and those opinions are not based on any reliable principles, methodology, or analysis.   Instead, Thomas' opinions are based upon impermissible speculation about what the inventor of the '838 Patent thought, what scientific documents from areas outside of his skill set mean, what an examiner at the United States Patent and Trademark Office ("USPTO") would have done, what Impax would have argued in a hypothetical litigation involving the '838 Patent, and how and when that litigation would have been concluded.   Thomas, like any other expert, is not a mind-reader, and cannot dress up his speculation as expert testimony simply based on his *ipse dixit* as a law professor.   Thomas' improper opinions that exceed the scope of his expertise and purport to answer ultimate legal questions the jury will be asked to decide should be excluded under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702.

In addition, the Court should exclude the opinions of Peter Hardigan on saved litigation costs that rely upon Thomas' speculative and unreliable opinion on the litigation timeline.

## LEGAL STANDARD

The proponent of the expert testimony must establish by a preponderance of the evidence that the expert's opinion is sufficiently reliable to satisfy Rule 702. *McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 422 (D. Mass. 2008) (citing *Daubert*, 509 U.S. 579 and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). To determine whether an expert's

testimony is sufficiently reliable, "the district court considers whether the 'testimony is based on sufficient facts or data'; and whether 'the testimony is the product of reliable principles and methods'; and whether 'the expert has reliably applied the principles and methods to the facts of the case.'" *Smith v. Dorchester Real Estate, Inc.*, 732 F.3d 51, 64 (1st Cir. 2013) (citations omitted). Thomas' opinion is simply not sufficiently reliable to be presented to the jury.

## ARGUMENT

### I. THOMAS' UNTIMELY NON-INFRINGEMENT OPINION FOR THE '838 PATENT SHOULD BE EXCLUDED

On May 4, 2017, Thomas provided an 81-page expert report in this case. In this report, he (a) acknowledged that his assignment included assessing infringement of the '838 Patent (Thomas Opening Report (Ex. 19) at ¶ 1)[1], and (b) provided non-infringement opinions for a number of other Solodyn patents. (*Id.* at ¶¶ 11, 12, 13, 16.) However, he provided no opinion on non-infringement of the '838 Patent.[2] Since then, Thomas has offered two separate new non-infringement opinions. First, in his reply report ("Reply Report," (Ex. 20)), Thomas offered one non-infringement opinion which was allegedly responsive to Defendants' experts' reports and was limited to a very specific scenario.[3]

Then, during his September 29, 2017 deposition (one month ago), Thomas introduced a second new non-infringement opinion for the '838 Patent. Specifically, Thomas argued for the

---

[1]   Unless otherwise indicated, all references to numbered exhibits in this Memorandum are references to the exhibits provided with the Transmittal Declaration of James R. Carroll, Esq. (*Daubert* Motions), filed herewith.

[2]   Thomas had absolutely no explanation for why he did not address non-infringement of the '838 Patent in his opening report, testifying only that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                                                            (Thomas Tr. (Ex. 27) at 131:1-11; *see also id.* at 118:17-22
(testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) On the contrary, Thomas is indeed obligated by Fed. R. Civ. P. 26(a) to present his positions in his expert reports.

[3]   The non-infringement position included in the Reply Report was limited to the scenario in which the Court adopts a particular reading of the '838 patent—a reading which neither Plaintiffs nor Defendants advocate. Ex. 20 at ¶ 5, 48, 50.

2

first time that █████████████████████████████████████████████████

████████████████████████████████████ (Ex. 27 at 53:7-19; 114:13-20; 119:2-

15; 120:5-15.) Not only are Plaintiffs now adopting that opinion—it forms the purported basis

for their upcoming summary judgment motion. (Dkt. 665.) The problem is that Thomas did not

disclose this opinion in his reports, and Plaintiffs did not raise it during the three years this case

has been pending. Instead, it was asserted at the very end of expert discovery, six days before

the parties' motions for leave to file summary judgment were due, and just a month before

summary judgment and Daubert motions are due.

Under these circumstances, Thomas' untimely new opinion on non-infringement of the

'838 Patent must be excluded. Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires that expert

reports contain "a complete statement of all opinions the witness will express and the basis and

reasons for them." If a party fails to comply with Rule 26(a), "the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Alves v. Mazda

Motor of Am., Inc.*, 448 F. Supp. 2d 285, 293 (D. Mass. 2006) ("The [proponent of the

testimony] has the burden of proving substantial justification or harmlessness." (citation

omitted)). Indeed, under First Circuit law, "[t]he baseline rule is that 'the required sanction in the

ordinary case is mandatory preclusion.'" *Santiago-Diaz v. Laboratorio Clinico Y De Referencia

Del Este And Sara Lopez, M.D.*, 456 F.3d 272, 276 (1st Cir. 2006) (quoting *Lohnes v. Level 3

Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001)). Accordingly, courts in this circuit routinely

exclude expert opinions not offered in reports. *See, e.g.*, *Carlucci v. CNH Am. LLC*, No. 10-

12205-DPW, 2012 WL 4094347, at *7 (D. Mass. Sept. 14, 2012) ("There is no justification, let

alone a substantial justification, for introducing a new theory of liability after the submission of

3

the expert report. And it can hardly be said to be harmless coming at the conclusion of discovery.
That is sufficient grounds to exclude the . . . opinion.").

Here, there is no justification for the late disclosure of Thomas' opinion. Plaintiffs bear
the burden of proof on causation, which includes the burden to prove that the Solodyn patents
were either invalid or not infringed by the generic ANDA filers. (*See* Defendants' Motion for
Summary Judgment Due to Lack of Causation, which is being filed contemporaneously
herewith.) Had Plaintiffs wished to pursue this newfound theory, they were obligated to disclose
it in a timely and fair manner; not to spring it on Defendants at the end of expert discovery. At
best, the failure to include his non-infringement opinion for the '838 Patent was a miscalculated
litigation strategy to rely exclusively on invalidity and unenforceability arguments for the '838
Patent—a strategy Plaintiffs sought to rethink as expert discovery came to a close. *See Alves*,
448 F. Supp. 2d at 293 (noting that courts find "miscalculated strategy topped by an inexcusable
failure to observe a long-established deadline" to not be substantially justified (quotations and
citation omitted)). At worst, Plaintiffs' late disclosure was intended to deprive Defendants of an
opportunity for their experts to substantively respond to the position. Either way, there is no
justification for Thomas' untimely disclosure, let alone a substantial justification.

Likewise, the late disclosure is not harmless, coming just before the deadline for motions
for leave to file summary judgment, and after the deadline for Defendants' expert reports.
Defendants did not have an opportunity to offer responses to these new arguments from their
experts[4] or to properly depose Thomas on the new theory introduced in the course of that very

---

[4] Indeed, Medicis' experts developed opinions for their reports on the understanding that Plaintiffs' experts did
not have any non-infringement positions for the '838 Patent. (*See, e.g.*, Wagner Report (Ex. 22) ¶ 165 (

 ); Polli Report (Ex. 25) ¶ 6 (

 ).)

4

deposition. Nor was there an opportunity for Defendants to develop a record related to the new non-infringement theory for the '838 Patent,[5] though even Thomas concedes that there are factual matters that may have been explored during discovery that would have bearing on the infringement question.[6] Accordingly, Thomas should be precluded from offering testimony on non-infringement of the '838 Patent. *See Martinez-Morales v. Victaulic Co.*, No. 11-1660 (MEL), 2013 WL 2443871, at *6-7 (D.P.R. June 5, 2013) (excluding expert testimony regarding an opinion first offered during deposition).

## II.   THOMAS' OPINIONS ON VALIDITY AND INFRINGEMENT ARE INADMISSIBLE

Thomas impermissibly offers a number of opinions on validity and infringement of the Solodyn patents that go well beyond his purported areas of expertise. Thomas is a lawyer, and admittedly not a person skilled in the art with regard to the technology at issue in the '838 Patent. (Ex. 27 at 158:23-159:5 ('██████████████████████████████████████████

████████); 106:10-13.) He has no scientific expertise in pharmaceutics or life sciences, *(id.* at 106:1-3), and he is not a chemist or a biologist. *(Id.* at 14:4-7.) Despite these admissions, Thomas boldly claims that he is able to analyze prior art by himself, *(see id.* at 223:5-10; 235:3-19), and offers several opinions on validity and infringement of the Solodyn patents that are not supported by any technical expert.

---

[5]   As Defendants pointed out in their Opposition to Plaintiffs' Motion for Leave to File Motions for Summary Judgment (Dkt. No. 677) at p. 3, Plaintiffs also did not disclose this non-infringement theory in their discovery responses or elsewhere.

[6]   *See* Ex. 27 at 133:12-134:2 ("████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████").

These opinions are inadmissible under Federal Rule of Evidence 702.   Under *Daubert* and Rule 702, an expert's testimony is limited to areas in which the expert has relevant experience.   *See Daubert*, 509 U.S. at 592 (noting that Rule 702 presumes that an expert has "reliable basis in the knowledge and experience of his discipline").   Because of this, courts regularly exclude testimony from patent law experts on technical issues such as validity and infringement.   *See Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008) ("Because [the patent law expert] was never offered as a technical expert, and in fact was not qualified as a technical expert, it was an abuse of discretion for the district court to permit him to testify as an expert on the issues of noninfringement or invalidity."); *Hypertherm, Inc. v. Am. Torch Tip Co.*, No. 05-cv-373-JD, 2009 WL 530064, at *5 (D.N.H. Feb. 27, 2009) ("A witness will not be permitted to testify as a technical expert on the issues of patent infringement and validity unless he is shown to be skilled in the pertinent art.").

As discussed above, Thomas offered at deposition a non-infringement opinion that addresses all claims of the '838 Patent.   This non-infringement opinion is his own opinion, not based on any technical opinion rendered by Plaintiffs' technical expert, Dr. Kibbe.   Indeed, Dr. Kibbe is silent as to non-infringement of the '838 Patent.   (*See* Kibbe Opening Report (Ex. 3) ¶¶ 9-10 ████████████████████████████████████████████████

████████████).)[7]

---

[7]   Additionally, Thomas purports to provide a non-infringement opinion on ████████████
████████████████████████ (Ex. 19 at Heading IX.D.)   However, he never actually provides such an opinion.   Instead, here merely states that ████████████████
████████████ (*Id.* at ¶ 165; Ex. 27 at 279:18-280:4 ████
████████.)   Likewise, Dr. Kibbe does not offer a non-infringement opinion for these claims. (Ex. 3 at ¶¶ 81-82 ████████████████████████████████.)

Thomas also improperly offers his own opinions on the validity of certain patents—specifically, certain claims of the '838, '347, '373, '705, and '776 Patents.  As for validity of the '838 Patent, Thomas opines that ████████████████████████████████████████████ ████ (Ex. 19 at ¶¶ 84-90; Ex. 20 at ¶¶ 5, 13), and appears to opine that ███████████████████ ████████████████████ (Ex. 19 at ¶¶ 80, 82, 106; Ex. 20 at ¶¶ 28-35.)  This opinion is again devoid of any support from Plaintiffs' technical expert, Dr. Kibbe, who ███████████████████ ████████████████████████████████████████████████████████████████████████ ████████████ (*See* Kibbe Tr. (Ex. 17) at 56:15-25.) ████████████████████████ ████████████████████████████████ (Ex. 27 at 282:11-283:3; Ex. 19 at ¶ 200), ████████████████████████████████ (Ex. 27 at 285:9-24; Ex. 19 at ¶¶ 210-213), though he lacks the qualifications to do so.

Moreover, Thomas' opinions on validity for the '347 and '373 Patents highlight the problems associated with permitting testimony on these matters from an expert without any relevant technical expertise.  In his reports, Thomas opined, on his own, that the '347 and '373 Patents were invalid ████████████ (Ex. 19 at §§ E, F; Ex. 20 at ¶ 57), though Dr. Kibbe did not offer an opinion on validity for these patents.  (*See* Ex. 3 at ¶¶ 11-12.)  During his deposition, Thomas admitted that his opinions on validity of the '347 and '373 Patents are incorrect, and that he has no basis to offer that opinion.  (Ex. 27 at 158:23-160:5 ("████████████████████");  162:13-24 (same).)

Thomas does not have the requisite expertise to offer his unsupported and, at times, admittedly incorrect opinions on invalidity and non-infringement of certain Solodyn patents.  The court should preclude Thomas from offering testimony on all technical issues in this case.  *See, e.g., Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. C-09-01201 RMW, 2011 WL

11709387, at *18 (N.D. Cal. Aug. 19, 2011) (excluding patent law expert's testimony on invalidity); *Radio Sys. Corp. v. Lalor*, No. C10-828RSL, 2014 WL 4626298, at *3 (W.D. Wash. Sept. 12, 2014) (cautioning that patent law expert's testimony on infringement could "lead jurors to legal conclusions that are based on [the expert's] experience as a patent attorney").

## III. THOMAS' REMAINING OPINIONS ON VALIDITY AND INFRINGEMENT MERELY PARROT DR. KIBBE'S OPINIONS AND SHOULD BE EXCLUDED

While experts may rely on the opinions of other experts, an expert is "not permitted to be the mouthpiece of a scientist in a different specialty." *See United States v. Zolot*, 968 F. Supp. 2d 411, 426 (D. Mass. 2013) (quoting *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)). Accordingly, expert opinions that merely parrot those of other experts are not permissible. *See, e.g., Town of Wolfeboro v. Wright-Pierce, Inc.*, No. 12-cv-130-JD, 2014 WL 1806843, at *2 (D.N.H. Apr. 2, 2014) ("To the extent [the expert] simply parrots the conclusions of other experts' reports in his report, those are not his opinions based on facts or data appropriately relied on in his field.").

Thomas devotes over a dozen pages of his Opening Report to merely repeating Dr. Kibbe's analysis for infringement and validity of the Solodyn patents.[8] If Plaintiffs plan to offer Thomas' testimony to parrot Dr. Kibbe's analysis, this would serve only to "bless" Dr. Kibbe's

---



[8]   *See* Ex. 19 at ¶¶ 125-129 (⬛⬛⬛); ¶¶ 131-135 (⬛); ¶¶ 141-158 (⬛⬛⬛); ¶ 166 (⬛); ¶¶ 93-95, 97-102 (⬛); ¶¶ 180-188 (⬛⬛⬛); Ex. 27 at 283:4-11 (⬛); Ex. 19 at ¶¶ 193-199 (⬛⬛⬛); Ex. 27 at 281:14-25 (⬛); Ex. 19 at ¶¶ 205-206 (⬛); Ex. 27 at 283:12-25 (⬛); Ex. 19 at ¶¶ 216-221 (⬛); Ex. 27 at 286:4-6 (⬛).

opinions, which are riddled with errors.[9]  Thomas' testimony repeating Dr. Kibbe's analysis is not based on his own expertise, would not assist the trier of fact, and should not be permitted. Indeed, Thomas' testimony has been excluded on the same basis previously.  *See Joyal Prods. v. Johnson Elec. N. Am., Inc.*, No. 04-5172 (JAP), 2009 WL 512156, at *6 (D.N.J. Feb. 27, 2009) (precluding Thomas' testimony on patent validity due to objections that it was "patently inappropriate" and "frivolous"), *aff'd*, 335 F. App'x 48 (Fed. Cir. 2009); Brief in Support of Plaintiff Joyal Products, Inc.'s Motion to Exclude the Expert Report and Testimony of Attorney John R. Thomas at 5, *Joyal Prods. v. Johnson Elec. N. Am., Inc.*, No. 04-5172 (JAP) (D.N.J. Feb. 26, 2009) (Dkt. No. 97-1) (noting that Mr. Thomas "merely repeats and then 'agrees' with the analysis of [the] technical expert").

## IV.    THOMAS' OPINIONS ON INEQUITABLE CONDUCT ARE INADMISSIBLE

Thomas offers opinions pertaining to inequitable conduct that are inadmissible for several reasons.  Inequitable conduct requires Plaintiffs to prove both that (1) the withheld information was "material," *i.e.*, that the patent would not have issued if the withheld information was disclosed, and (2) that the patentee acted with the "specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011).  A legal expert is not equipped to offer opinions on either materiality or specific intent, or on the ultimate legal conclusion of inequitable conduct, as addressed below.

---

[9]    Thomas even acknowledges these errors.  Thomas testified that ███████████████ ████████████████████████████████████ (Ex. 27 at 219:21:221:16), even though Dr. Kibbe provides merely conclusory boilerplate language on the combination of references.  (*See, e.g.*, Ex. 3 at ¶¶ 111, 113, 128, 136, 162, 164-165, 167-168.)  In addition, Thomas acknowledged Dr. Kibbe's admissions that ████████ (Ex. 27. at 231:12-18.)

## A.  Materiality

Materiality is a technical matter; it requires an evaluation of (a) whether a given piece of information renders a claim unpatentable, and (b) whether the information is cumulative, *i.e.*, whether its relevant elements and features had already been disclosed to the PTO. *See Smith & Nephew, Inc. v. Interlace Med., Inc.*, 955 F. Supp. 2d 69, 75-76 (D. Mass. 2013). Accordingly, courts have precluded patent law expert testimony on the materiality of allegedly withheld information. *See, e.g., Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, No. CV 07-8108 FMO (SHx), 2014 WL 12586105, at *9 (C.D. Cal. Jan. 3, 2014) (holding that a patent law expert "will not be permitted to testify about the underlying technical questions involved in determining materiality of the scientific article at issue").

Here, although Thomas is not a technical expert, he purports to offer his own opinions that certain prior art anticipated the '838 Patent claims rendering them invalid,[10] and then uses his opinions as the basis for opining that such prior art is "material." As demonstrated above, a technical evaluation of whether prior art meets the claims of the '838 Patent is outside of the expertise of a legal expert like Thomas. Accordingly, Thomas should not be permitted to expound technical opinions as to materiality.

Moreover, as explained in the concurrently-filed *Daubert* motion to exclude testimony of Mr. Doll, any opinions on the actions that an examiner *would have taken* if presented with the allegedly material information are speculative and inadmissible. *See Abbott Biotechnology Ltd.*

---



[10]  Ex. 19 at ¶¶ 80 (stating, without citation, _____; 82 (stating, without citation, _____; 90 (stating, without citation, _____); Ex. 20 at ¶¶ 23 (stating, without citation, _____"); 28 (stating, without citation, _____).

*v. Centocor Ortho Biotech, Inc.*, No. 09-40089-FDS, 2014 WL 7330777, at *8 (D. Mass. Dec. 19, 2014) (holding that a patent law expert "may not speculate as to what the examiner did or did not think, or how different information would have impacted the examiner's opinions or thought"); Ex. 19 at ¶ 107 ("



); ¶ 110 (

);

Ex. 27 at 253:17-25 (agreeing he holds the opinion that

).

**B.** **Specific Intent**

Likewise, prevailing law requires that Thomas be precluded from offering opinions on the inventor's state of mind. At his deposition, Thomas made clear that he is offering opinions based on his speculation about

(*See, e.g., id.* at 262:8-263:7

*id.* at 59:23-60:19 (same).) Thomas' opinions on the intent of the inventor are not based on any expertise and are inadmissible under well-established law. *See, e.g., ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 510 (D. Del. 2016) ("[The expert] is not, however, an expert on [an inventor's] state of mind, and therefore cannot opine on whether [the inventor] was lying or mistaken . . . ."); *Se-Kure Controls, Inc. v. Diam USA, Inc.*, No. 06 C 4857, 2009 WL WL 77463, at *2 (N.D. Ill. Jan. 9, 2009) ("[The patent law expert] is also not a mind-reader. He may not testify that he knows [plaintiff's] intent to hide certain information nor

11

may he testify that he knows [plaintiff] lied about certain information.").[11]   Indeed, Thomas admits█████████████████████████████████ As he explained, █████████████
██████████████████████████████████████████████████ (Ex. 27 at 262:8-263:7.)

Finally, Thomas' opinions on intent should also be excluded because they are not based on any specialized skill or knowledge.  Instead, Thomas speculates as to inferences he might draw from certain facts—completely divorced from any skill or expertise he purports to have. (*See, e.g.,* Ex. 27 at 262:8-263:7 (███████████████████████████████████████
████████████████████████████████████████████████████████).)   Such opinions should be excluded as they invade the province of the jury.  *See Sundance*, 550 F.3d at 1364 ("The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions.");  *United States v. Jacques*, 784 F. Supp. 2d 59, 63 (D. Mass. 2011) ("Expert testimony was not needed to draw common-sense inferences from these visual and auditory cues." (citation omitted)).

---

[11]   Even if this Court were to find that Thomas may opine on intent—which would be in conflict with the prevailing law—as with his non-infringement opinion, Thomas first disclosed during his deposition ██████████████████  Thomas' reports do not even *mention* ██████████████
███████████ At very best, he makes opaque statements that may be construed as relevant to intent in his reply report, *(see, e.g.,* Ex. 20 at ¶ 17 ("███████████████████████████"); ¶ 20 (██████████████
███████████████) Thomas is well aware that intent is a requirement of inequitable conduct, (Ex. 27 at 254:1-15)—and in fact devoted an entire section to intent in an expert report for an unrelated litigation. (*See* Thomas Deposition Exhibit 8 (Thomas' Expert Report, *Young v. Lumenis,* No. 2:03-cv-00655 (S.D. Ohio Aug. 1, 2004) (2004) (Dkt. No. 52-1)) (Ex. 26) at pp. 11-12.)  As with his surprise new theory of non-infringement for the '838 Patent, this last minute opinion on ██████████████ violates Federal Rule of Civil Procedure 26(a) and should not be countenanced. *See* Fed. R. Civ. P. 37(c)(1). Nevertheless, any opinion on intent is inadmissible, as explained herein.

12

## C. Legal Conclusion of Inequitable Conduct

In addition, it is axiomatic that experts cannot testify as to ultimate legal conclusions, including whether a patent is unenforceable due to inequitable conduct, whether allegedly withheld information is "material," and conclusions relating to an "intent to deceive." *See* Fed. R. Evid. 704 advisory committee's note ("opinions which would merely tell the jury what result to reach" should be excluded); *see also Alfred E. Mann Found.*, 2014 WL 12586105, at *10 (C.D. Cal. Jan. 3, 2014) ("[T]he court will not allow [the patent law expert] to testify about what conclusion to reach on the issue of inequitable conduct, including any opinions as to breach of the duty of disclosure, intent to deceive, or materiality."); *Toro Co. v. MTD Prods. Inc.*, No. 10-756 (JNE/TNL), 2013 WL 12156671, at *1 (D. Minn. Feb. 5, 2013) (excluding testimony from a patent law expert as to "the duty of candor, intent to deceive, materiality of prior art, and the patent examiner's performance"). Despite clear boundaries set by courts, Thomas' reports and deposition testimony are replete with legal conclusions on precisely these issues. (*See, e.g.*, Ex. 19 at ¶ 107 ("

"); Ex. 27 at 255:6-256:13 ("

").)

For the foregoing reasons, Thomas' opinions on inequitable conduct and its elements should be excluded.

## V. THOMAS' OPINIONS ON MEDICIS' LIKELIHOOD OF SUCCESS IN THE PATENT LITIGATION ARE INADMISSIBLE

Thomas' opinion that

must also be excluded. (Ex. 19 at ¶ 122.) This opinion is based on the flawed opinions discussed above that the '838 Patent was invalid and unenforceable. Because those underlying opinions are

13

inadmissible, his ultimate opinion on Medicis' likelihood of success must also be excluded.

Moreover, as explained in Section VI, *infra*, the opinion should also be excluded because it is

based upon layers of speculation and conjecture—including sheer speculation about what Impax

would have asserted in the patent litigation, and how the court would have ruled on a motion

Impax never filed in the real world. Thomas is not a mind-reader, and cannot offer such

speculative opinions.

## VI. THOMAS' OPINION REGARDING THE LITIGATION TIMELINE FOR THE HYPOTHETICAL MEDICIS-IMPAX PATENT LITIGATION SHOULD BE EXCLUDED AS BASED ON UNSUPPORTED, AND UNSUPPORTABLE, SPECULATION

The Court should exclude Thomas' proffered opinion regarding the hypothetical litigation

timeline because it is not the product of any reliable methodology, but instead is based on his

speculation and unsupportable *ipse dixit*. Moreover, even if Thomas is qualified to opine on

these issues, his opinion based on the *Mylan* scheduling order involves no scientific, technical, or

specialized knowledge and would therefore not assist the jury.

### A.   Thomas' Litigation Timeline Is Not the Product of Any Reliable Methodology or Analysis

Thomas' proposed opinion that Impax would have expected resolution before November

2011 is pure speculation and based on nothing more than his *ipse dixit*. Originally, Thomas

offered that Impax could have prevailed in a hypothetical patent litigation versus Medicis in █

█████, such that the trial *and* appeal could have been completed by ██████████████

before the November 2011 licensed entry date. (Ex. 19 at ¶¶ 232-33; Ex. 27 at 35:2-4, 36:4-12.)

To reach this opinion, Thomas assumes that ███████████████████████████

(Ex. 19 at ¶ 228; Ex. 27 at 31:4-12), and then uses a single data point—the initial scheduling

order in *Medicis Pharm. Corp. v. Mylan Inc. et al*, No. 09cv033 (hereinafter "Mylan

Litigation")— a scheduling order entered nearly a year after Impax and Medicis settled in a case

that Impax was not a party to—to construct his opinion on the schedule of the hypothetical

Medicis-Impax litigation. (Rule 16 Schedule Order, Mylan Litigation (Ex. 20).) This opinion is

not supported by sufficient facts, relevant experience, nor a reliable methodology, and cannot

satisfy the requirements of Rule 702. *See e.g., Equal Emp't Opportunity Comm'n v. Tex.*

*Roadhouse, Inc.*, 215 F. Supp. 3d 140, 158 (D. Mass. 2016) (striking an expert's opinions

because there was no "reliable factual basis" for it).

    First, Thomas did not employ any reliable methodology to arrive at his timeline for the

hypothetical litigation.[12] He did not do any analysis of statistics regarding median timelines for

cases in the District of Delaware to reach trial, nor any analysis of how the Medicis-Impax

litigation might have compared to other patent cases presented in that district. (Ex. 27 at 38:7-16

█████████████████████████████████████████████████████████

██████████████████████████████"), 39:13-18, 41:6-42:2, 43:2-6, 68:18-69:4, 107:10-24.)

In fact, when faced with statistics showing that the median length of time for a patent case to

reach trial in the District of Delaware is over two years—████████████████████—

Thomas said he had no facts to dispute those statistics and had not considered them in reaching

his opinion. (*Id.* at 40:5-42:2.) Indeed, Thomas' opinion in this case is directly contradicted by

his own writings and research. For example, looking outside the context of Thomas' work as an

expert on this case, in his textbook, Pharmaceutical Patent Law, Thomas wrote, "[e]xperience

---

[12]   To the extent Thomas attempts to save his opinion that the Mylan schedule is a "reasonable measure" of how long it would have taken the Medicis-Impax litigation to be resolve based on his own experience, that, too, must be rejected. If a "witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it." *United States v. Frabizio*, 445 F. Supp. 2d 152, 163 (D. Mass. 2006) (quotations and citation omitted); *accord McGovern*, 584 F. Supp. 2d at 426. However, Thomas has no relevant practical experience that could support such an opinion. He has never litigated a Hatch-Waxman case, whether in the District of Delaware or otherwise. (Ex. 27 at 20:24-21:2.)

has shown . . . that pharmaceutical patent litigation *rarely runs its course in the 30-month time frame.*" (John R. Thomas, Pharmaceutical Patent Law at 610 (3d ed. 2015) (Ex. 28) (emphasis added); *see also* Ex. 27 at 38:3-6.)

Third, the unreliability of his opinion is illustrated by examining the entire record in the Mylan Litigation he cites. Thomas' opinion ignores that the timeline in the Mylan Litigation was extended several times after the initial scheduling order, with dispositive motion deadlines ultimately extended to June 20, 2011 with a trial date to be determined. (Stipulated Amended Rule 16 Scheduling Order, Mylan Litigation (Ex. 18).) Thomas actually acknowledges this fact in a footnote of his report, and acknowledges that█████████████████████████████████████

████████████████████████████████████████████████████████████████ yet for

some reason he fails to alter his proposed timeline accordingly. (Ex. 19 at n.70; Ex. 27 at 70:24-71:21.) Adding Thomas' estimate of█████████for appeal to the extended trial date of the Mylan Litigation would extend Thomas' timeline until early Fall 2012—*nearly a year after* Impax's November 2011 licensed entry date.

Additionally, although Thomas admits it was reasonable that Medicis would have asserted the '705 Patent against Impax, he makes no attempt to address how that would impact the timeline for the hypothetical litigation. (*Id.* at 72:13-19.) He cleanly admitted he has no opinion that the '705 Patent litigation would have concluded before November 2011. (*Id.* at 72:20-23.) Thomas' hypothetical timeline simply cannot stand in the face of all of these issues that undermine his conclusion.

Accordingly, Thomas' hypothetical█████████timeline opinion is not supported by sufficient facts nor a reliable methodology, and should be excluded. *See Equal Emp't Opportunity Comm'n*, 215 F. Supp. 3d at 158.

16

**B.      Thomas' Opinion that Impax Would Have Won The Litigation Early On
Summary Judgment Is Based on Layers of Unsupported Speculation**

After Defendants' experts identified the significant flaws in Thomas' litigation timeline,

he shifted his opinion and asserted in his rebuttal report that the hypothetical patent litigation

would have been resolved "well in advance of trial" by summary judgment.  (Ex. 20 at ¶ 11

("███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████  This replacement opinion is similarly unreliable and should be

excluded.  Thomas' opinion about the mythical summary judgment motion is nothing more than

speculation piled on top of speculation.  Given that there was no summary judgment motion

actually filed, to reach his opinion, Thomas first divines the defenses Impax would have raised,

the evidence they would have compiled, and the arguments they would have raised on summary

judgment.  (Ex. 27 at 44:6-23.)  He then asserts that he can predict precisely how the judge

would have reacted to the mythical summary judgment motion.  (*Id.* at 44:24-45:20.)  This

speculative opinion should be excluded.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531,

550 n.62 (S.D.N.Y. 2004) (excluding expert testimony related to what FDA might have done in

hypothetical circumstances as speculation when the expert arrived at conclusions before having

supporting data); *Bartlett v. Mut. Pharm. Co.*, 742 F. Supp. 2d 182, 189 (D.N.H. 2010)

(excluding expert testimony as insufficiently reliable when the testimony was based on what the

"FDA purportedly believed or would have done").

Even if the Court would indulge such speculation, which it should not, Thomas conceded

at his deposition that he does not know and cannot really say what would have happened.

Thomas does not offer an explanation as to how or why this would have resolved all of the patent

litigation before November 2011, especially considering the claims related to the '705 Patent or

17



additional Solodyn patents. (Ex. 27 at 72:23-73:17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) As Thomas

acknowledged, there is no guarantee that either party will win a patent infringement suit (*id.* at

21:22-22:6), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*

at 268:10-16 (emphasis added)), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ (*Id.* at 47:22-24.) Indeed, Thomas went as far as to say, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮" (*Id.* at 47:8-15.) Yet, that's precisely the type of mind-reading Thomas

performs in rendering his opinion, and which courts have excluded. For example, Thomas'

opinions, including the opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were excluded in *In re*

*Nexium (Esomeprazole) Antitrust Litigation.* (*In re Nexium*, No. 12-md-2409 (D. Mass. Aug. 23,

2013) (Dkt. No. 846) (Ex. 31) ("[T]he two lawyers, Upadhye and Thomas will not testify.");

Motions Hearing and Pretrial Conference (Jan. 21, 2013) (Ex. 32) at 62:6-8.)[13]

Even if the court were to accept such speculation by Thomas, that would not support his

opinion that summary judgment would have ended the litigation *before November 2011*.

Thomas does not have an opinion as to a date by which Impax would have won its hypothetical

motion for summary judgment. (Ex. 27 at 45:21-24.) Thus, he has no basis to say that it would

have actually shortened the litigation by any appreciable amount of time. Indeed, his opinion is

directly contradicted by the scheduling order from the Mylan case on which he relies. In the

*Mylan* scheduling order, the court made clear that "because this is a bench trial the Court will

---

[13] Others courts have rejected similar opinions Thomas has offered. *See* Report and Recommendation, *Iris Corp. v. Japan Airlines Int'l Co.*, No. 06-6336, ECF 33 (E.D.N.Y. Jan. 14, 2008) (Ex. 29) (rejecting Thomas' opinion that a motion to dismiss should be denied); decision in *Young v. Lumenis* (Ex. 30) (excluding opinion that patent was unenforceable due to inequitable conduct); Ex. 27 at 97:6-99:7 (admitting that the court disagreed with his inequitable conduct opinion in *Young*).)

18

likely not decide the [dispositive] motions prior to trial," precluding resolution "well in advance of trial" as he suggests. (Ex. 18 at 5.) In the absence of any support for his proposed opinion regarding summary judgment motion resolution, the Court should preclude this unreliable opinion. (Ex. 27 at 45:22-24.)

### C.    Thomas' Reading of the Mylan Scheduling Order Will Not Assist the Jury

Even if this Court finds that Thomas can offer a litigation timeline based on a single preliminary scheduling order from a case Impax was not a party to, the Court should exclude his testimony because it will not aid the jury. Reading the trial date set out in a single scheduling order requires no scientific, technical or specialized knowledge as required by Rule 702. An expert opinion is simply unnecessary for the jury to understand the implications of the single order on which he bases his opinion. "[T]he trier of fact has no need for an opinion [that] easily can be derived from common sense, common experience, the trier of fact's own perceptions, or simple logic." *United States v. Zajanckauskas*, 441 F.3d 32, 39 (1st Cir. 2006) (brackets and citation omitted). Presenting Thomas' opinions to the jury as expert opinions despite the jury's ability to understand the scheduling order without expert assistance is entirely improper.

## VII.   HARDIGAN'S CALCULATION OF LITIGATION EXPENSES BASED ON THE THOMAS LITIGATION TIMELINE SHOULD BE EXCLUDED

In purporting to estimate the saved litigation costs to Defendants obtained by settlement, Hardigan relies upon Thomas' hypothetical███████ litigation timeline. In fact, he plainly states that he ████████████████████████████████████████████████████████ ████████████████████████████████████████ (Hardigan Opening Report (Ex. 21) at ¶¶ 11, 39; Hardigan Reply Report (Ex. 13) at ¶ 15 n.8.) Accordingly, all of Hardigan's calculations on saved litigation costs are reliant on Thomas' ████████ timeline, and Hardigan has not

endeavored to calculate the purported saved litigation costs based on any other timeline. (Hardigan Tr. (Ex. 26) at 228:6-229:12, 229:23-230:11, 302:4-13.)    Accordingly, any of Hardigan's calculations that are based on the demonstrably speculative and unsupported timeline provided by Thomas should also be excluded.

## CONCLUSION

For the foregoing reasons, Thomas' opinions on (a) non-infringement of the '838 Patent, (b) validity and infringement of the Solodyn Patents, (c) inequitable conduct and its elements and applicability to any Solodyn Patent, (d) Medicis' likelihood of success in litigation over the Solodyn Patents, (e) a timeline of the hypothetical Medicis-Impax litigation, and (f) Hardigan's opinions that are based on Thomas' timeline should be excluded.

Dated:  November 1, 2017                    Respectfully submitted,
        Boston, Massachusetts

*J. Douglas Baldridge* (admitted *pro hac vice*)    James R. Carroll (BBO #554426)
Lisa Jose Fales (admitted *pro hac vice* )          SKADDEN, ARPS, SLATE,
Danielle Foley (admitted *pro hac vice*)              MEAGHER & FLOM LLP
Kristin M. Koger (admitted *pro hac vice*)          500 Boylston Street
VENABLE LLP                                         Boston, Massachusetts 02116
600 Massachusetts Avenue, NW                        Tel: (617) 573-4800
Washington, DC 20001                                James.Carroll@skadden.com
Tel: (202) 344-4000
jbaldridge@venable.com                              Steven C. Sunshine (admitted *pro hac vice*)
ljfales@venable.com                                 Julia K. York (admitted *pro hac vice*)
drfoley@venable.com                                 Sean M. Tepe (admitted *pro hac vice*)
kmkoger@venable.com                                 SKADDEN, ARPS, SLATE,
                                                      MEAGHER & FLOM LLP
*Counsel for Defendant*                             1440 New York Avenue, N.W.
*Impax Laboratories, Inc.*                          Washington, D.C. 20005
                                                    Tel: (202) 371-7000
Kenneth R. O'Rourke (admitted *pro hac vice*)       Steve.Sunshine@skadden.com
Anna M. Fabish (admitted *pro hac vice*)            Julia.York@skadden.com
Stephen McIntyre (admitted *pro hac vice*)          Sean.Tepe@skadden.com
O'MELVENY & MYERS LLP
400 S. Hope Street, 18th Floor                      *Counsel for Defendant*
Los Angeles, CA  90071-2899                         *Medicis Pharmaceutical Corp.*
Tel: (213) 430-6000
korourke@omm.com
afabish@omm.com
smcintyre@omm.com                           ┌─────────────────────────────────

Joseph L. Demeo (BBO # 561254)
Lawrence C. Delaney (BBO # 557063)
DEMEO LLP
200 State Street
Boston, MA 02109
Tel: (617) 263-2600
jdemeo@demeollp.com
ldelaney@demeollp.com

*Counsel for Defendant*
*Impax Laboratories, Inc.*

---

**CERTIFICATE OF SERVICE**

I, James R. Carroll, hereby certify that on November 1, 2017, I caused a true copy of the foregoing document to be served by email upon counsel of record as indicated on the Service List attached hereto.

Dated: November 1, 2017
                                        James R. Carroll

**In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation**

Service List

| **Direct Purchaser Plaintiffs** | **End Payor (Indirect Purchaser) Plaintiffs** |
|---|---|
| Thomas M. Sobol<br>Lauren G. Barnes<br>Jessica R. MacAuley<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142<br>Tel: (617) 482-3700<br>Fax: (617) 482-3003<br>tom@hbsslaw.com<br>lauren@hbsslaw.com<br>jessicam@hbsslaw.com<br><br>*Interim Liaison and Co-Lead Counsel for Proposed Direct Purchaser Class* | Glen DeValerio<br>BERMAN DeVALERIO<br>One Liberty Square<br>Boston, MA 02109<br>Tel: (617) 542-8300<br>Fax: (617) 542-1194<br>gdevalerio@bermandevalerio.com<br><br>*Interim Liaison Counsel for the Proposed End-Payor Class* |
| David F. Sorensen<br>Andrew C. Curley<br>Caitlin G. Coslett<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, P A 19103<br>Tel: (215) 875-3000<br>Fax: (215) 875-4604<br>dsorensen@bm.net<br>acurley@bm.net<br>ccoslett@bm.net<br><br>*Interim Co-Lead Counsel for Proposed Direct Purchaser Class* | Steve D. Shadowen<br>Anne Fornecker<br>HILLIARD & SHADOWEN LLP<br>39 West Main Street<br>Mechanicsburg, PA 17055<br>Tel: (855) 344-3928<br>anne@hilliardshadowenlaw.com<br><br>Michael M. Buchman<br>MOTLEY RICE LLC<br>600 Third Avenue, 21st Floor<br>New York, NY 10016<br>Tel: (212) 577-0040<br>mbuchman@motleyrice.com<br><br>*Interim Co-Lead Counsel for the Proposed End-Payor Class* |
| Peter Kohn<br>Joseph T. Lukens<br>FARUQI & FARUQI, LLP<br>101 Greenwood Avenue, Suite 600<br>Jenkintown, PA 19046<br>Tel: (215) 277-5770<br>Fax: (215) 277-5771<br>pkohn@faruqilaw.com<br>jlukens@faruqilaw.com | Daniel C. Girard<br>GIRARD GIBBS LLP<br>601 California Street<br>San Francisco, CA 94108<br>Tel: (415) 981-4800<br>Fax: (415) 981-4846<br>dcg@girardgibbs.com |

Barry Taus
Archana Tamoshunas
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
btaus@tcllaw.com
atamoshunas@tcllaw.com

*Counsel for Plaintiff Rochester Drug Cooperative,
Inc.*

Jayne A. Goldstein
POMERANTZ GROSSMAN HUFFORD
   DAHLSTROM & GROSS LLP
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Tel: (954) 315-3454
Fax: (954) 313-3455
jagoldstein@pomlaw.com

J. Douglas Richards
COHEN MILSTEIN
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400

*Executive Committee for the Proposed End-Payor
Class*

## Rite Aid Plaintiffs

Barry L. Refsin
HANGLEY ARONCHICK SEGAL PUDLIN &
   SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7031
Facsimile: (215) 568-0300
brefsin@hangley.com

Monica L. Rebuck
Eric L. Bloom
HANGLEY ARONCHICK SEGAL PUDLIN &
   SCHILLER
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Telephone: (717) 364-1007
Facsimile: (717) 234-3982
mrebuck@hangley.com

*Counsel for Rite Aid Plaintiffs*

## CVS Plaintiffs

Monica L. Rebuck
Eric L. Bloom
HANGLEY ARONCHICK SEGAL PUDLIN
   & SCHILLER
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Telephone: (717) 364-1007
Facsimile: (717) 234-3982
mrebuck@hangley.com
ebloom@hangley.com

Barry L. Refsin
HANGLEY ARONCHICK SEGAL PUDLIN
   & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6200
brefsin@hangley.com

*Counsel for Plaintiff CVS Pharmacy, Inc.*

**Walgreen Plaintiffs**

Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-1000
(305) 372-1861
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

*Counsel for Walgreen Plaintiffs*