# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SOLODYN (MINOCYCLINE HYDROCHLORIDE) ANTITRUST LITIGATION | MDL No. 2503<br><br>1:14-md-2503-DJC |
| THIS DOCUMENT RELATES TO:<br><br>*Walgreen* (15-cv-11544)<br>*Rite Aid* (15-cv-11761)<br>*CVS* (16-cv-10238) | |

**RETAILER PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE COURT'S DECEMBER 8, 2017 ELECTRONIC ORDER AND IN OPPOSITION TO MEDICIS'S MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS ARISING OUT OF ITS SETTLEMENTS WITH SANDOZ AND LUPIN**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................2

    I.      MEDICIS'S MOTION IS ONLY PARTLY MOOT ...................................2

    II.     RETAILER PLAINTIFFS ARE ENTITLED TO CHALLENGE
            THE SANDOZ REVERSE-PAYMENT SETTLEMENT AS AN
            ELEMENT OF MEDICIS'S OVERALL SCHEME ...................................3

CONCLUSION ..............................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Teva Pharms. USA, Inc.*,
    432 F. Supp. 2d 408 (D. Del. 2006) ..................................................................... 4, 6

*Belskis v. State of Me. Board of Corrections*,
    2015 WL 5995267 (D. Me. Oct. 14, 2015) ................................................................ 3

*Biovail Corp. Int'l v. Hoechst AG*,
    49 F. Supp. 2d 750 (D.N.J. 1999) ....................................................................... 4, 6, 7

*FTC v. Actavis, Inc.*,
    133 S. Ct. 2223 (2013) ................................................................................................. 3

*In re Asacol Antitrust Litigation*,
    233 F. Supp. 3d 247 (D. Mass. 2017) ................................................................. 3, 4, 5

*In re Metoprolol Succinate Direct Purchaser Antitrust Litigation*,
    2010 WL 1485328 (D. Del. Apr. 13, 2010) ............................................................ 3-4

*In re Nexium (Esomeprazole) Antitrust Litigation*,
    842 F.3d 34 (1st Cir. 2016) ......................................................................................... 3

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*,
    2015 WL 5458570 (D. Mass. Aug. 14, 2015) ......................................................... 1, 5

*Machine Project, Inc. v. Pan American World Airways, Inc.*,
    220 F. Supp. 3d 152 (D. Mass. 2016) ......................................................................... 2

*SmithKline Beecham Corp. v. Apotex Corp.*,
    383 F. Supp. 2d 686 (E.D. Pa. 2004) ..................................................................... 4, 6

Retailer Plaintiffs respectfully submit this memorandum in response to the Court December 8, 2017 Electronic Order (Doc. 832) and in opposition to Medicis's motion for summary judgment on all claims relating to the Sandoz and Lupin settlements (Docs. 719 & 723).[1]  As Medicis acknowledges in its memorandum (Def. Mem. 2-4), Retailer Plaintiffs are in a somewhat different position from the two sets of Class Plaintiffs on this subject.  As a result, Medicis's motion is only partly moot insofar as it seeks relief against Retailer Plaintiffs.  As explained below, the aspect of the motion that is not moot should be denied.

### ARGUMENT

### I.     MEDICIS'S MOTION IS ONLY PARTLY MOOT

The Court's December 8, 2017 Electronic Order notes that the Court dismissed the class Plaintiffs' section 2 claims in 2015.  *See In re Solodyn (Minocycline Hydrochloride Antitrust Litig.*, 2015 WL 5458570 (D. Mass. Aug. 14, 2015).  However, that ruling, and the motions that led to it, were not addressed to Retailer Plaintiffs' claims, which were not pending in this Court at the time the motions to dismiss were filed.  *See* Def. Mem. 3.

After the Court's 2015 opinion was issued, Retailer Plaintiffs agreed to accept the Court's ruling without further motion practice, with one notable exception: Retailer Plaintiffs continued to assert their section 2 claims against Medicis based solely on the Impax, Sandoz and Lupin settlements that the Court had ruled were potentially unlawful under section 1.  *See, e.g., United States v. Griffith*, 334 U.S. 100, 106 (1948) (violation of section 1 can constitute monopolizing conduct or attempted monopolization under section 2).  That agreement was memorialized in Stipulations between Retailer Plaintiffs and Medicis that were submitted to and

---

[1] This memorandum is submitted on behalf of Retailer Plaintiffs only and responds to Medicis's motion only as it relates to Retailer Plaintiffs' claims.

1

approved by the Court.  Docs. 244 & 271; *see* Def. Mem. 3.  Retailer Plaintiffs' amended complaints, filed after the Court's 2015 ruling, explicitly stated that Retailer Plaintiffs were asserting section 2 claims against Medicis based on the Impax, Sandoz and Lupin settlement agreements and explicitly included those section 2 claims.  *See* Def. Mem. 3-4.  References in the section 2 claims to the settlement agreements were in bold font.  *E.g.*, Doc. 216, ¶ 303.  Rather than moving to dismiss Retailer Plaintiffs' section 2 claims, Medicis answered.  Docs. 247, 248 & 275.  Inclusion of the section 2 claims had no effect on the scope of discovery because Retailer Plaintiffs had agreed that the claims were based solely on the three settlement agreements and those settlements were the subject of discovery in any event.

After the conclusion of discovery, Medicis asked Retailer Plaintiffs whether they intended to continue to pursue claims based on the Lupin and Sandoz settlement agreements.  Retailer Plaintiffs responded that they did not intend to pursue their stand-alone section 1 claims based on either settlement and would not rely on the Lupin settlement as an element of their section 2 claims, but did intend to rely on the Sandoz settlement as an element of their section 2 claims.  *See* Def. Mem. 4.  Medicis then filed the current summary judgment motion, which seeks an order precluding Retailer Plaintiffs from relying on the Sandoz settlement on the *sole* ground that Retailer Plaintiffs cannot prove that the settlement delayed Sandoz's entry into the market.  *See* Def. Mem. 2 ("Medicis is entitled to summary judgment because . . . the supposed 'payment' [to Sandoz] . . . cannot have occasioned any delay").

Retailer Plaintiffs agree with the Court that, as it relates to the Lupin settlement and to Retailer Plaintiffs' stand-alone section 1 claim based on the Sandoz settlement, Medicis's motion should be denied (or dismissed) as moot.  *See Machine Project, Inc. v. Pan American World Airways, Inc.*, 220 F. Supp. 3d 152, 162 (D. Mass. 2016) (motion for summary judgment

directed to dismissed claims was moot); *Belskis v. State of Me. Board of Corrections*, 2015 WL 5995267, at *8 (D. Me. Oct. 14, 2015) (same). However, the motion is not moot insofar as it seeks to preclude Retailer Plaintiffs from relying on the Sandoz settlement as an element of Medicis's alleged section 2 violations. That relief should be denied on the merits because the law does not require an antitrust plaintiff to prove that a reverse payment caused injury in order to challenge the payment as an element of a section 2 violation. *See In re Asacol Antitrust Litig.*, 233 F. Supp. 3d 247, 266 (D. Mass. 2017) (the fact that reverse-payment settlement did not delay generic entry or cause injury to the plaintiffs did not preclude them from proving that the settlement was part of an overall scheme to monopolize) (Casper, J). As the Supreme Court held in *Actavis*, reverse payments tend to have "significant adverse effects on competition" and can violate the antitrust laws without proof that they have actually delayed generic entry or injured purchasers. *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2231 (2013); *see In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 59-61 (1st Cir. 2016) (evidence supported jury finding that brand manufacturer made large and unjustified payment to a generic competitor that was unreasonably anticompetitive but also that the payment did not delay competitor's entry).

**II.     RETAILER PLAINTIFFS ARE ENTITLED TO CHALLENGE THE SANDOZ REVERSE-PAYMENT SETTLEMENT AS AN ELEMENT OF MEDICIS'S OVERALL SCHEME**

While a claimed antitrust violation must cause injury to the plaintiff in order to support a claim for damages under section 4 of the Clayton Act, *see* Def. Mem. 7, an antitrust plaintiff is not required to allege or prove that *each aspect or element* of a violation caused injury in order to challenge that aspect or element of the violation. The requirement of proving impact or injury applies to the antitrust violation *as a whole* and not to each individual element of the violation. *See Asacol*, 233 F. Supp. 3d at 266; *In re Metoprolol Succinate Direct Purchaser*

3

*Antitrust Litig.*, 2010 WL 1485328, at *4 (D. Del. Apr. 13, 2010) (in deciding whether the plaintiff can establish injury, "the court must consider the defendant's 'conduct as a whole'"); *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 431 (D. Del. 2006) ("Since the claim depends on proof of the anticompetitive effect of the conduct as a whole, the question of antitrust injury should also be based on that conduct as a whole"); *SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 699-703 (E.D. Pa. 2004); *Biovail Corp. Int'l v. Hoechst AG*, 49 F. Supp. 2d 750, 760 (D.N.J. 1999).

As these cases make clear, this legal principle has been applied repeatedly in cases alleging reverse payments or other efforts to delay generic competition. It was applied most recently by this Court in *Asacol*. In that case, this Court considered allegations that a branded pharmaceutical company had suppressed generic competition through a multi-faceted scheme that included product hopping and reverse payments to generic competitors. The Court found that, while the plaintiffs had sufficiently alleged an unlawful reverse payment, they had not sufficiently alleged that the reverse payment delayed generic entry or caused injury to the plaintiffs. *See Asacol*, 233 F. Supp. 3d at 265-66. The Court nevertheless held that the reverse payment "may still support their claims as to an overall monopolization scheme." *Id.* at 266. As the Court explained:

> Although the Direct Purchasers have not demonstrated that they have standing to bring a separate reverse payment claim, *their allegations in this regard may still support their claims as to an overall monopolization scheme*. . . .  Thus, the Direct Purchasers' lack of standing to bring a separate reverse payment claim—where they have otherwise alleged a sufficiently large and unjustified reverse payment—does not mandate that the reverse payment allegations in their anticompetitive scheme claims . . . be dismissed.

*Id.* (emphasis added).

4

This holding is directly on point. This Court held in 2015 that Plaintiffs had adequately alleged a large and unjustified reverse payment from Medicis to Sandoz. *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570 at *9. And Medicis's current motion for summary judgment does not dispute that Retailer Plaintiffs can *prove* the existence of such a payment; it is based solely on Medicis's contention that the unlawful payment to Sandoz "cannot have occasioned any delay." Def. Mem. 2. *See also id.* at 9, heading II ("Plaintiffs Cannot Prove That Sandoz Was Induced To Delay Its Entry or That The Medicis-[Sandoz] Settlement Caused Them Harm"); *id.* at 11 ("Plaintiffs . . . cannot prove that Sandoz delayed its entry as a result of an alleged overpayment by Medicis"). As this Court held in *Asacol*, an absence of proof that the reverse payment to Sandoz delayed Sandoz's entry into the market does not preclude Retailer Plaintiffs from relying on the payment to Sandoz as an element of their "overall monopolization scheme." 233 F. Supp. 3d at 266.

Other courts have ruled similarly. In the *Abbott Laboratories* case, a number of plaintiffs challenged a scheme by Abbott that involved filing sham patent litigation cases against generic competitors and, while the regulatory stays resulting from those cases were in effect, switching the market from one form of its drug to another (*e.g.*, from capsules to tablets, or from one strength of tablet to another) in order to delay generic competition. Abbott moved to dismiss on the ground that certain aspects of this alleged scheme did not cause the plaintiffs any injury. Judge Jordan rejected the argument:

> Defendants' argument fails because the presence of an antitrust injury must be determined after considering Defendants' conduct as a whole. As discussed above, . . . "the courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's* [*Inc. v. 3M*], 324 F.3d [141] at 162 [(3d Cir. 2003)] (citing *Cont'l Ore* [*Co. v. Union Carbide & Carbon Corp.*,] 370 U.S. [690] at 699 [(1962)]). Since the claim depends on proof of the anticompetitive effect of the conduct as a

5

>whole, the question of antitrust injury [to the plaintiff] should also
>be based on that conduct as a whole.  Defendants do not argue that
>Plaintiffs have failed to allege antitrust injury for their overall
>scheme claims taken as a whole.

432 F. Supp. 2d at 431.

Likewise, in *SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686 (E.D. Pa. 2004), Torpharm, a generic manufacturer, sued SmithKline, the manufacturer of Paxil, for taking various actions that allegedly delayed generic competition and maintained its monopoly over paroxetine hydrochloride (the active ingredient in Paxil).  The court ruled that Torpharm suffered no compensable antitrust injury from one particular aspect of the alleged scheme (a settlement agreement that allowed another generic manufacturer to compete with the plaintiff during Torpharm's 180 days of exclusivity).  *Id.* at 698 (settlement agreement "actually *increased* competition in the market for paroxetine hydrochloride" and, while the increased competition caused Torpharm to make less money, that harm did not constitute antitrust injury). The defendant then asked the court to dismiss the plaintiff's overall monopolization and attempted monopolization claims "to the extent they are based on the Settlement." *Id.* at 702. The court declined, noting Torpharm's allegation "that SmithKline entered into the Settlement as part of a larger scheme to maintain its monopoly" and holding that, in such cases, the plaintiff is only required to prove antitrust injury from the defendants' acts "as a whole" and not from individual elements. *Id.* at 702.  While Torpharm would not be permitted to recover the profits it allegedly lost due to the authorized generic (because those lost profits were not a compensable injury), it was not thereby precluded from challenging the settlement agreement as an element of SmithKline's overall antitrust violation.

Finally, in *Biovail Corp. Int'l v. Hoechst AG*, 49 F. Supp. 2d 750, 760 (D.N.J. 1999), a case arising from (among other things) a reverse-payment settlement, the court ruled to

6

the same effect—that a plaintiff need only show antitrust injury from the defendant's unlawful conduct taken as a whole, and is not required to show injury from each element of the scheme:

> In its effort to compartmentalize Biovail's factual allegations, defendants contend, at various points in their brief, that one particular allegation or another did not cause Biovail injury and, therefore, must be dismissed. It is, of course, correct that antitrust injury must be shown before a private party has standing to bring an antitrust claim. The allegations, however, under *Continental Ore*, should not be so "tightly compartmentalize[ed]." This court will not, therefore, consider whether each allegation resulted in antitrust injury. Rather, the court will first examine whether an antitrust violation has been alleged; then, if a violation has been alleged, the court will examine whether—*as a result of all of the violations alleged*—Biovail has suffered "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."

*Id.* at 760 (citations omitted; emphasis added).

Medicis does not dispute (for purposes of its motion) that Retailer Plaintiffs can prove an unlawful reverse payment to Sandoz, nor that Medicis's overall scheme delayed generic entry and caused injury. Under the unambiguous case law cited above, including this Court's decision in *Asacol*, Retailer Plaintiffs are entitled to prove that the reverse payment was an element of Medicis's anticompetitive scheme.

## CONCLUSION

For the reasons stated above, Medicis's motion is moot as it relates to the Lupin settlement and to Retailer Plaintiffs' stand-alone section 1 claim based on the Sandoz settlement and should be denied or dismissed on that ground. As it relates to Retailer Plaintiffs' reliance on the Sandoz settlement as an element of Medicis's alleged section 2 violations, Medicis's motion should be denied on the merits.

Respectfully submitted,

| | |
|---|---|
| /s/ Scott E. Perwin | /s/ Barry L. Refsin |
| Scott E. Perwin | Barry L. Refsin |
| Lauren C. Ravkind | Monica L. Rebuck |
| Anna T. Neill | Eric L. Bloom |
| KENNY NACHWALTER P.A. | HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER |
| Four Seasons Tower | |
| 1441 Brickell Avenue, Suite 1100 | One Logan Square, 27th Floor |
| Miami, FL 33131 | Philadelphia, PA 19103 |
| Tel.: (305) 373-1000 | Tel.: (215) 496-7031 |
| Fax: (305) 372-1861 | Fax: (215) 568-0300 |
| | |
| *Counsel for Walgreen Plaintiffs* | *Counsel for CVS Pharmacy, Inc., Rite Aid Corp. and Rite Aid Hdqtrs. Corp.* |

CERTIFICATE OF SERVICE

I, Scott E. Perwin, hereby certify that I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system on December 11, 2017. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ Scott E. Perwin
Scott E. Perwin