UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------- x
IN RE SOLODYN (MINOCYCLINE  :
HYDROCHLORIDE) ANTITRUST    :
LITIGATION                  :     MDL No. 2503
----------------------------------- x  Civil Action No. 1:14-md-02503-DJC
THIS DOCUMENT RELATES TO:   :
ALL ACTIONS                 :     **PUBLIC VERSION**
                            :
----------------------------------- x

# DEFENDANTS MEDICIS PHARMACEUTICAL CORP. AND IMPAX LABORATORIES, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF JOHN R. THOMAS AND PETER HARDIGAN

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    PLAINTIFFS FAIL TO ARTICULATE ANY LEGITIMATE
BASIS FOR THOMAS'S OPINION ON TECHNICAL PATENT ISSUES ..................... 2

II.    PLAINTIFFS IGNORE THOMAS'S PARROTING OF DR. KIBBE'S OPINION .......... 4

III.    THOMAS'S INEQUITABLE CONDUCT OPINIONS ARE NOT ADMISSIBLE .......... 4

IV.    THERE IS NO BASIS FOR THE
ADMISSION OF THOMAS'S LITIGATION
TIMELINE OR HIS OPINIONS ON THE OUTCOME OF LITIGATION ...................... 7

    A.    Plaintiffs' Explanation For Thomas's Failure To Consider
The Relevant Information Illustrates The Flaws In His "Methodology" ................ 7

    B.    Plaintiffs Ignore Arguments
Regarding Thomas's Speculation And Conjecture .................................................. 8

    C.    Acceptance Of Thomas's Prior
Testimony Regarding Regulatory Approvals Does Not
Qualify Him As An Expert On The Timing And Outcome of Litigation ............... 9

    D.    Hardigan's Opinions Should Be Excluded ............................................................ 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**  **PAGE(S)**

*Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*,
   No. CV 07-8108 FMO (SHx), 2014 WL 12586105 (C.D. Cal. Jan. 3, 2014) ...................... 6

*Allen v. Martin Surfacing*,
   263 F.R.D. 47 (D. Mass. 2008) .................................................................................... 4

*Ferrara & DiMercurio v. St. Paul Mercury Insurance Co.*,
   240 F.3d 1 (1st Cir. 2001) .......................................................................................... 4

*Holmes Group, Inc. v. RPS Products*,
   No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727 (D. Mass. June 25, 2010) ............ 5, 6

*In re Asacol Antitrust Litigation*,
   No. 15-cv-12730, 2017 U.S. Dist. LEXIS 186009 (D. Mass. Nov. 9, 2017) ................... 10

*In re Nexium (Esomeprazole) Antitrust Litigation*,
   42 F. Supp.3d 231 (D. Mass. 2014) ............................................................................. 9

*In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class*,
   868 F.3d 132 (3d Cir. 2017) ....................................................................................... 9

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation*,
   No. 3:09-md-02100-DRH-PMF, 2011 U.S. Dist. LEXIS 145593
   (S.D. Ill. Dec. 16, 2011) .......................................................................................... 9, 10

*Iris Corp. v. Japan Airlines International Co.*,
   No. 1:06-cv-06336 (E.D.N.Y. Jan. 14, 2008) ............................................................... 7

*Iris Corp. v. Japan Airlines International Co.*,
   No. 1:06-cv-06336 (E.D.N.Y. June 1, 2007) ................................................................ 7

*Joyal Products v. Johnson Electric North America, Inc.*,
   No. 04-5172, 2009 WL 512156 (D.N.J. Feb. 27, 2009) ................................................ 4

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   No. 06-1797, 2015 WL 12645764 (E.D. Pa. Dec. 22, 2015) ...................................... 4, 9

*McGovern ex rel. McGovern v. Brigham & Women's Hospital*,
   584 F. Supp. 2d 418 (D. Mass. 2008) .......................................................................... 1

*Medicines Co. v. Mylan Inc.*,
   No. 11-cv-1285, 2014 U.S. Dist. LEXIS 61084 (N.D. Ill. May 2, 2014) ...................... 5, 6

**CASES** **PAGE(S)**

*Microfinancial, Inc. v. Premier Holidays International, Inc.*,
    385 F.3d 72 (1st Cir. 2004)......................................................................................8

*Smith v. Jenkins*,
    732 F.3d 51 (1st Cir. 2013)........................................................................................8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 107992 (N.D. Cal. May 12, 2008) ..3, 5, 6

*United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA*,
    No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 182940 (N.D. Cal. Nov. 3, 2017).....5, 9

*United States v. Valle*,
    72 F.3d 210 (1st Cir. 1995)........................................................................................6

*Young v. Lumenis*,
    2:10-cv-00655 (S.D. Ohio July 27, 2004) ................................................................7

## INTRODUCTION

Plaintiffs have not demonstrated that John Thomas's opinions are based on sufficient facts, data, or reliable methodology necessary to be admissible. Instead, Plaintiffs' opposition brief ("Opposition" or "Opp.") is largely premised on the insistence that Thomas is a well-credentialed legal scholar. The case law is clear, however, that there are limits to permissible testimony of even the most established legal expert. For example, an expert's testimony must be limited to the area of his or her expertise, *i.e.*, an opinion "that society—outside the litigation process—seeks from this individual as it goes about its daily living." *McGovern ex rel. McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 424 (D. Mass. 2008). There is no question that society does not ask Thomas to perform technical analyses on infringement of, validity of, or materiality of prior art to pharmaceutical patents.

Similarly, even where an expert possesses extensive qualifications in a given field, the proffered opinion is inadmissible if it is "mere speculation" or "there is simply too great an analytical gap between the data and the opinion proffered." *Id.* at 425-26 (internal quotation marks omitted). That holds true here for Thomas's opinions of inventor intent, likelihood of success, litigation timeline, and the outcome of litigation, which have no basis in fact.

Moreover, Plaintiffs have failed to rebut several of Defendants' arguments,[1] and also have completely abandoned their theory that Impax would have won the patent litigation and launched free from risk before November 2011, thereby eliminating Thomas's timeline and litigation disposition opinions, and thus the basis for Hardigan's opinions, as well.

---

[1] Plaintiffs have failed to respond to Defendants' challenges to: (1) Thomas's invalidity opinions on the '838, '347, and '373 Patents; (2) Thomas's opinions that merely parrot those of Plaintiffs' technical expert Dr. Arthur Kibbe; and (3) Thomas's opinions on actions that the patent examiner *would have taken*.

## ARGUMENT

### I. PLAINTIFFS FAIL TO ARTICULATE ANY LEGITIMATE BASIS FOR THOMAS'S OPINION ON TECHNICAL PATENT ISSUES

Patent law experts are not qualified to opine on technical matters. (Defs.' Medicis Pharm. Corp. And Impax Labs., Inc.'s Memo. In Support Of Mot. To Exclude Opinions And Testimony Of John R. Thomas And Peter Hardigan ("Motion" or "Mot.") at 6.) To avoid this well-settled law, Plaintiffs attempt to rewrite Thomas's invalidity opinions as permissible legal opinions that rely on scientific experts for technical evaluations. In Thomas's report and deposition, however, he openly relied on his own technical analyses, despite admitting he lacks any skill in pharmaceutical science. (Carroll Daubert Decl. Ex. 27 (Thomas Dep. 158:23-159:5, 106:1-13).[2])[3]

Thomas was *the only expert* to opine that certain claims of the '838, '347, '373, '705, and '776 Patents are invalid. (Mot. at 7.) Plaintiffs do not even attempt to justify Thomas's invalidity opinions on the '838, '347, or '373 Patents. This silence alone is sufficient to support preclusion. Moreover, Plaintiffs' technical experts (Drs. Kibbe and Vashi) performed no scientific analysis that could form the basis for Thomas's technical opinions regarding alleged invalidity of the '838 Patent. (*See* Mot. at 7.) And Thomas openly admitted that his validity opinions on the '347 and '373 Patents were incorrect.[4] (*Id.*)

---

[2]  All exhibits cited herein have been submitted as exhibits to either the (i) Transmittal Declaration of James R. Carroll (Daubert Motions) dated November 1, 2017 ("Carroll Daubert Decl.") or (ii) Reply Transmittal Declaration of James R. Carroll (Daubert Motions) dated January 5, 2018 ("Carroll Daubert Reply Decl.").

[3]  Plaintiffs' reference to Medicis's patent law expert, Professor Polk Wagner, is misguided, as his report and deposition demonstrate that he provides testimony ▓▓▓▓▓▓ (*See, e.g.*, Carroll Daubert Decl. Ex. 22 (Wagner Rep. ¶ 217 ▓▓▓▓▓).)

[4]  Plaintiffs overstate Dr. Langer's opinion on ▓▓▓▓▓ (Opp. at 7, fn. 32.) Dr. Langer's opinion was limited to "▓▓▓▓▓ (Carroll Daubert Reply Decl. Ex. 34 (Langer Rep. ¶¶ 222, 225)), ▓▓

2

Plaintiffs' attempts to defend Thomas's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ also fail. Although Plaintiffs claim that Thomas relied on Drs. Kibbe and Vashi for all technical aspects of his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ the record reveals that Thomas concocted his own technical conclusions. (*Compare* Carroll Daubert Decl. Ex. 19 (Thomas Rep. ¶¶ 200, 210, 211-13) *with* Carroll Daubert Decl. Ex. 5 (Vashi Rep. at §§ IV.B, VI.A (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇)).) Plaintiffs' attempt to shoehorn Thomas's invalidity opinions into *Therasense*—an inequitable conduct case—is likewise unavailing. The rationale in *Therasense* is inapplicable, because the invalidity issues here are not "independent of scientific complexity," and require expertise in the underlying technical art. *See Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 U.S. Dist. LEXIS 107992, at *9-10 (N.D. Cal. May 12, 2008) (limiting the holding to situations where technical expertise is not required).

Plaintiffs' attempt to salvage a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ (Opp. at 7-8) is also without merit. As an initial matter, Thomas admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Instead, Thomas ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇ (*See* Mot. at 6 n.7; Opp. at 8 n.37.) This does not constitute a non-infringement opinion and such speculation will not assist the jury—especially where Thomas could not say ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ (Mot. at 6 n.7 (citing Thomas Dep. 279:18-280:4).) Nevertheless, Plaintiffs insist that Thomas did ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ (Opp. at 8.) However, the determination that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3

███ requires technical expertise—expertise that Thomas does not have and did not seek from anyone qualified to analyze the efficacy requirements of the patent claims.[5]

## II. PLAINTIFFS IGNORE THOMAS'S PARROTING OF DR. KIBBE'S OPINION

Plaintiffs do not actually respond to Defendants' argument that many of Thomas's "opinions" merely parrot Dr. Kibbe. (Mot. at 8-9; Opp. at 9-10.) Defendants identified *52 paragraphs* of Thomas's report devoted to simply regurgitating Dr. Kibbe's analysis. (Mot. at 8 n.8.) Mere parroting is prohibited—and such testimony from Thomas has been excluded before.[6] (*Id.* at 8-9.) The *parroting* of Dr. Kibbe's opinions in these 52 paragraphs is distinct from any other later analyses *relying* on such opinion and, accordingly, Defendants moved to exclude only the portions of Thomas's report that merely repeat Dr. Kibbe's opinions.[7]

## III. THOMAS'S INEQUITABLE CONDUCT OPINIONS ARE NOT ADMISSIBLE

Neither Plaintiffs' efforts to highlight Thomas's experience as a law professor nor the cases they rely upon can salvage Thomas's technical and speculative inequitable conduct opinions related to the '838 Patent. Thomas admits that he lacks the scientific qualifications needed to opine on the materiality of prior art—a step required for inequitable conduct. (Carroll

---

[5] Plaintiffs reintroduce (a) their new non-infringement theory and (b) their conflation of patent and antitrust litigation burdens into their opposition. (Opp. at 4, Section I.A.) Neither render Thomas's opinions on technical issues admissible. The Court ordered additional expert discovery on Thomas's new non-infringement argument for the '838 Patent, and Defendants will address the sufficiency of Thomas's new opinion at the appropriate time.

[6] Contrary to Plaintiffs' assertion, (Opp. at 10 n.45), the *Joyal* case is relevant. The *Joyal* court recognized movant's argument that the "identification of John Thomas, a law professor, as an expert to opine on the validity of [the] patent was patently inappropriate and frivolous" and then stated that Thomas was precluded from testifying at trial. *Joyal Prods. v. Johnson Elec. N. Am., Inc.*, No. 04-5172, 2009 WL 512156, at *6 (D.N.J. Feb. 27, 2009) (internal quotation marks omitted).

[7] *Ferrara* and *King Drug* are inapplicable here. In *Ferrara*, the opinions at issue did not involve parroting another opinion, but rather *reliance* on the opinions of other experts in the formation of the testifying expert's own opinions. *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001); *see also Allen v. Martin Surfacing*, 263 F.R.D. 47, 64-5 (D. Mass. 2008) (quoting *Ferrara* and permitting *reliance* on another expert for the testifying expert's *own* opinion). And in *King Drug*, the court recognized that experts cannot "parrot the ideas" of others, but found, in that instance, the testimony did not do so. *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-1797, 2015 WL 12645764, at *4-5 (E.D. Pa. Dec. 22, 2015).

Daubert Decl. Ex. 27 (Thomas Dep. 158:23-159:5 ('███████████████

███████████████)).) Dr. Kibbe did not perform any such ███ analysis.

The cases cited by Plaintiffs *confirm* that a legal expert like Thomas may not provide a materiality opinion. Plaintiffs cite *Medicines Co. v. Mylan Inc.*, No. 11-cv-1285, 2014 U.S. Dist. LEXIS 61084, at *19 (N.D. Ill. May 2, 2014) for the out-of-context proposition that a "patent law expert [may] 'opine on whether a certain criteria is material to a Patent Office examiner.'" (Opp. at 13 n.58.) As an initial matter, the expert in *Medicines Co.* was not merely a "patent law expert," but also a former Solicitor of Patents and Trademarks at the PTO and Administrative Patent Judge *who had expertise in the relevant art. Id.* at *4. Moreover, despite these qualifications, the court limited the expert to testimony on general PTO procedures and practices. *Id.* at *18-19. The Court was clear that experts may not "interpret[] patent law," assess intent to deceive, or speculate about what a patent examiner would have done if additional information had been submitted.[8,9] *Id.* at *18-21. Accordingly, Plaintiffs' cases are consistent with the well-established law Defendants cited in their Motion—which Plaintiffs did not attempt to distinguish—that non-technical experts are not permitted to opine on the technical question of

---

[8] The court also took into account that "this case is a bench trial" and noted that "[t]he Court, as the trier of fact in this case, is free to disregard or curtail the testimony." *Meds. Co.*, 2010 U.S. Dist. LEXIS 105118, at *19.

[9] *Therasense* and *Holmes*, (Opp. at 11 n.48, and 13 n.58), are inapplicable. *Holmes* involved a PTO expert, not a patent law expert. *Holmes Grp., Inc. v. RPS Prods.*, No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727, at *13 (D. Mass. June 25, 2010). More importantly, *Holmes* did not address a technical issue, but rather the failure of the patentee to disclose the existence of a litigation. *Id.* at *14. Similarly, the truncated quote Plaintiffs cite from *Therasense* did not permit a legal expert to opine on an issue that required technical analysis. *Therasense*, 2008 U.S. Dist. LEXIS 107992, at *12 (noting that the expert's interpretation "can be understood without resort to science" and "lawyer witnesses . . . should stop short of trying to explain the underlying science"). Plaintiffs' reliance on the *Lidoderm* summary judgment opinion is likewise misplaced. *Lidoderm* does not, as Plaintiffs suggest, stand for the proposition that a legal expert may opine on whether an inventor "affirmatively misled the PTO" or acted with "intent to deceive." (Opp. at 11 nn. 48 & 57 (citing *United Food & Commer. Workers Local 1776 v. Teikoku Pharma USA ("Lidoderm")*, No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 182940 (N.D. Cal. Nov. 3, 2017)).) Rather, one of the cited passages explains the position argued on summary judgment by one of the parties, and indicates that the party relied on an expert for some aspect of its summary judgment position. *Lidoderm*, at *59-61. The other passage discusses whether an expert used the "wrong legal standard" for opinions relating to validity and enforceability. *Id.* at *117-20.

materiality.[10] (Mot. at 10, 13 (citing, among others, *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, No. CV 07-8108 FMO (SHx), 2014 WL 12586105 (C.D. Cal. Jan. 3, 2014)).)

Additionally, Thomas's opinion that ███████████████████████[11] is textbook inadmissible.[12] Nevertheless, Plaintiffs attempt to justify such testimony on the basis that Thomas identified facts that purportedly underlie that opinion. (Opp. at 13.) Not so. While Plaintiffs' cases indicate that an expert may identify facts pertinent to a determination of intent, these cases explicitly forbid an expert from testifying as to the presence of intent.[13] That is exactly what Thomas attempts to do here.

Finally, Plaintiffs attempt to defend Thomas's conclusions on the ultimate legal issue of inequitable conduct by arguing either (a) that Thomas only identifies facts and draws reasonable inferences, rather than offering legal conclusions; or (b) that legal conclusions are permissible in antitrust actions, though prohibited in a patent action. But Plaintiffs cite *nothing* to refute the numerous legal conclusions identified by Defendants (Mot. at 13) or to suggest it is permissible in antitrust cases for experts to present legal conclusions to the jury. Moreover, Plaintiffs'

---

[10] Plaintiffs did not respond to Defendants' argument that experts may not speculate as to actions the patent examiner *would have taken* if additional information had been submitted. (Mot. at 10-11.) Nor could they. Even Plaintiffs' cases confirm that experts may not "opin[e] on what the Patent Office Examiner would have done or thought had she been given different information." *Meds. Co.*, 2014 U.S. Dist. LEXIS 61084, at *25.

[11] Inexplicably, Plaintiffs concede that Thomas rendered an opinion on ███████████ (Opp. at 11), and then criticize Defendants for characterizing his testimony as '███████████████████" (*Id.* at 13.)

[12] Plaintiffs do not address the cases cited by Defendants (Mot. at 11-12) and Plaintiffs' own cases confirm inadmissibility here. *See, e.g., Holmes*, 2010 U.S. Dist. LEXIS 102727, at *15 ("An expert witness may not testify as to another person's intent. No level of experience or expertise will make an expert witness a mind-reader.").

[13] *See Meds. Co.*, 2014 U.S. Dist. LEXIS 61084, at *16-17 (concluding that "[p]atent experts may not testify that they know the patentee's intent to hide or lie about certain information during the patent prosecution process because they are not mind-readers" and may not "plumb the inventor's and attorney's minds and discern whether they lacked candor or had actual intent to deceive") (citations omitted) (internal quotation marks omitted); *see also Therasense*, 2008 U.S. Dist. LEXIS 107992, at *12-13 ("It bears repeating that no expert of any kind will be allowed to speculate as to anyone's subjective intent or knowledge. The experts can point to evidence bearing on these issues, such as a deposition admission or smoking-gun memo to file, but they cannot submit speculation or argument on subjective intent and knowledge."). *United States v. Valle*, a criminal case that analyzes the scope of Federal Rule of Evidence 704(b), likewise contradicts Plaintiffs' position. 72 F.3d 210, 216 (1st Cir. 1995) (holding "that Rule 704(b) prohibits all direct expert testimony concerning a criminal defendant's intent").

6

insistence that legal conclusion testimony here does not "invade the province of the jury" is inaccurate. (Opp. at 14). Thomas offers his opinions on inequitable conduct to prove causation—a determination the jury will have to make if this case progresses to trial.

In short, Thomas's opinions—which exceed the permissible scope of expert opinion on inequitable conduct[14] and include (a) technical determinations on materiality, (b) supposition as to how an examiner would have responded to certain information, (c) conclusions regarding an inventor's intent, and (d) ultimate legal conclusions—are not permissible under *Daubert*.[15]

## IV. THERE IS NO BASIS FOR THE ADMISSION OF THOMAS'S LITIGATION TIMELINE OR HIS OPINIONS ON THE OUTCOME OF LITIGATION

Any argument that Thomas's timeline and litigation disposition opinions are relevant was put to rest in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Causation, where Plaintiffs abandoned their theory that Impax would have won the patent litigation and launched free from risk before November 2011. (*See* Causation Opp. at 1-2.) Nevertheless, Plaintiffs still argue that those opinions should be allowed. Their arguments fail.

### A. Plaintiffs' Explanation For Thomas's Failure To Consider The Relevant Information Illustrates The Flaws In His "Methodology"

Although Thomas purportedly bases his hypothetical litigation timeline on ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ he ignored ▬▬▬

---

[14] Plaintiffs' suggestion that the court in *Young* "accepted" Thomas's inequitable conduct opinion is inaccurate. (*See* Opp. at 19-20.) In that case, Thomas opined that the patent at issue was unenforceable due to inequitable conduct. *See* Inequitable Conduct Expert Report of Professor J. Thomas, *Young v. Lumenis*, 2:03-cv-00655 (S.D. Ohio Aug. 10, 2004), ECF No. 52-1 at 5. The court disagreed with Thomas, finding no inequitable conduct. *See* Opinion and Order, *Young v. Lumenis*, 2:03-cv-00655 (S.D. Ohio Oct. 19, 2004), ECF No. 61 at 1. Similarly, the court in *Iris Corp.* rejected Thomas's opinion that the motion to dismiss at issue should be denied. *See* Iris Co.'s Memo. in Opp'n to Japan Airlines Int'l Co., Ltd's Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), *Iris Corp. v. Japan Airlines Int'l Co.*, 1:06-cv-06336 (E.D.N.Y. June 1, 2007), ECF No. 25-2 at 1. The Court found no inequitable conduct and granted the motion to dismiss. *See* Report and Recommendation, *Iris Corp. v. Japan Airlines Int'l Co.*, 1:06-cv-06336 (E.D.N.Y. Jan. 14, 2008), ECF No. 33 at 1.

[15] Because Thomas's opinions on validity, infringement, and inequitable conduct are not reliable, so too is his resulting opinion on Medicis's likelihood of success, which he found to be "▬▬▬▬▬" (Mot. at 13-14.)

7

████████ Plaintiffs' explanation—that Thomas did not need to consider ████ because he based his timeline on ██████████████████████████ ██████—undermines any argument that Thomas's methodology is reliable. (Opp. at 16.) Like the █████ Thomas ignored, the ████ he relied upon to develop his timeline was not ████████████████████, and thus indicates nothing about the ██████ ████████████████████ Plaintiffs cannot have it both ways. Either all of the Medicis-Mylan litigation timing must be considered, or none of it is relevant. This inconsistent analysis is precisely the type of methodology *Daubert* is intended to weed out.

### B. Plaintiffs Ignore Arguments Regarding Thomas's Speculation And Conjecture

Plaintiffs do not rebut Defendants' arguments that Thomas's opinions are *ipse dixit*, unsubstantiated by "sufficient facts or data" and not sufficiently reliable for jury consideration. *Smith v. Jenkins*, 732 F.3d 51, 64 (1st Cir. 2013). (*See* Mot. at 7-19.) Instead, Plaintiffs again point to Thomas's credentials—this time to argue that his credentials make *ipse dixit* opinions admissible. (*Id.* at 15-16.) Plaintiffs' contentions are contrary to binding precedent.[16]

While Plaintiffs suggest that Thomas's opinion regarding summary judgment in the hypothetical Medicis-Impax patent litigation is based on a "straight-forward interpretation of patent law and an analysis of the facts of the case," they fail to identify any analysis Thomas actually conducted. (*Id.* at 18.) As Thomas testified, ████████████████████

---

[16] Plaintiffs' reliance on *Microfinancial* is misplaced. The court found that the expert possessed the requisite expertise because he spent 33 years at the IRS investigating fraud involving similar financial accounts. Moreover, the court found that the expert relied on sufficient data, explaining his analysis of data in "excruciating detail." 385 F.3d 72, 80 (1st Cir. 2004). Here, Thomas not only lacks the litigation experience necessary to construct a litigation timeline or predict the results of litigation, his analysis lacks the requisite rigorous data. Also, Plaintiffs do not explain Thomas's failure to analyze relevant, available data, including information contained in his own writings. Specifically, Plaintiffs do not address Thomas's failure to consider: ████████████████████████████████████████████████████████████████████████████████ (Mot. at 15-16.)

███ (Mot. at 17.) As a result, in order to form his summary judgment opinion, Thomas had to divine the defenses and arguments Impax would have raised, as well as the evidence Impax would have compiled to support its motion—all from litigation that never happened. (*Id.* at 17.) This type of speculation is precisely why this Court rejected a similar hypothetical litigation timeline Thomas attempted to offer in *In re Nexium*, 42 F. Supp. 3d 231, 290 (D. Mass. 2014) (finding plaintiffs were unable to offer a "reasonable timeline for when these lawsuits could have been won"). Plaintiffs do not address (or distinguish), *In re Nexium* and have not met their burden to establish that Thomas's opinion is sufficiently reliable.

### C. Acceptance Of Thomas's Prior Testimony Regarding Regulatory Approvals Does Not Qualify Him As An Expert On The Timing And Outcome of Litigation

Thomas's prior testimony about when generic defendants would have been eligible for FDA approval does not render his opinions on the timing and outcome of litigation admissible. (Opp. at 16, n.71 (citing *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2015 WL 12645764, at *4 (E.D. Pa. Dec. 22, 2015)).)[17] Plaintiffs' cases—in which courts permitted a former FDA Commissioner to testify regarding actions a reasonable FDA official would have taken (*see* Opp. at 15 n.64)—are inapplicable to Thomas and his opinions in this case.[18] *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF,

---

[17] In *King Drug*, Thomas did not present testimony regarding a timeline of events in hypothetical litigation. In fact, he expressly disclaimed offering an opinion on when summary judgment would have been entered. In addition, in *King Drug*, Thomas constructed a timeline on *regulatory approval eligibility*. See *King Drug*, 2015 WL 12645764, at *4. Here, Thomas based his hypothetical litigation timeline on a single order in a case to which Impax was not even a party and ignores both real-world extensions in that litigation and relevant statistics.

[18] Plaintiffs cite *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 169 (3d Cir. 2017) for the proposition that experts may opine on likelihood of litigation success. (Opp. at 19 n.64.) There, however, none of the parties challenged the expert's analysis on likelihood of success. Plaintiffs' citation to *Lidoderm* is similarly unavailing. In *Lidoderm*, opinions regarding the outcome of litigation were challenged "on the grounds that those experts' opinions [were] divorced from the record evidence in the '529 trial." 2017 U.S. Dist. LEXIS 182940 at *117. Here, Defendants challenge the reliability of Thomas's timeline based on his lack of litigation experience, his inconsistent methodology, and his failure to consider relevant statistics.

2011 U.S. Dist. LEXIS 145593, at *41-42 (S.D. Ill. Dec. 16, 2011) ("*In re Yasmin*"); *see also In re Asacol*, No. 15-cv-12730, 2017 U.S. Dist. LEXIS 186009, at *58-59 (D. Mass. Nov. 9, 2017). In those cases, the courts allowed the testimony because the Commissioner's experience "uniquely qualifie[d]" him to so opine. *In re Yasmin*, 2011 U.S. Dist. LEXIS 145593, at *41-42; *see also In re Asacol*, 2017 U.S. Dist. LEXIS 186009, at *58-59. Thomas lacks any qualifications that enable him to reliably predict the outcome of any litigation.

Even if the Court were willing to entertain an apples-to-oranges comparison of litigation outcome to regulatory approvals, Thomas conceded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Carroll Daubert Decl. Ex. 27 (Thomas Dep. at 47:22-24), and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 268:10-16; *see also id.* at 21:22-22:8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

Accordingly, Thomas's opinions on the outcome and timing of the litigation are not sufficiently reliable and should be excluded.

### D. Hardigan's Opinions Should Be Excluded

Because Plaintiffs failed to demonstrate that Thomas's litigation timeline opinion is sufficiently reliable, Hardigan's opinion, which relies on that timeline and does not endeavor to calculate purported litigation costs on any other basis, should also be excluded.

## CONCLUSION

As requested in Defendants' original motion, Thomas should be precluded from: providing the above-identified invalidity and non-infringement opinions; parroting the opinions of Dr. Kibbe or others; offering opinions on inequitable conduct or its elements; and speculating about the timing of hypothetical Medicis-Impax litigation and the outcome of the litigation; and Hardigan's opinions that depend on those opinions should be excluded.

Dated:  January 5, 2018
         Boston, Massachusetts

*/s/ J. Douglas Baldridge (JRC)*

J. Douglas Baldridge (admitted *pro hac vice*)
Lisa Jose Fales (admitted *pro hac vice*)
Danielle Foley (admitted *pro hac vice*)
Kristin M. Koger (admitted *pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 344-4000
jbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
kmkoger@venable.com

*Counsel for Defendant*
*Impax Laboratories, Inc.*

Kenneth R. O'Rourke (admitted *pro hac vice*)
Anna M. Fabish (admitted *pro hac vice*)
Stephen McIntyre (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 S. Hope Street, 18th Floor
Los Angeles, CA 90071
Tel: (213) 430-6000
korourke@omm.com
afabish@omm.com
smcintyre@omm.com

*Counsel for Defendant*
*Impax Laboratories, Inc.*

Joseph L. Demeo (BBO # 561254)
Lawrence C. Delaney (BBO # 557063)
DEMEO LLP
200 State Street
Boston, MA 02109
Tel: (617) 263-2600
jdemeo@demeollp.com
ldelaney@demeollp.com

*Counsel for Defendant*
*Impax Laboratories, Inc.*

Respectfully submitted,

*/s/ James R. Carroll*

James R. Carroll (BBO #554426)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
Tel: (617) 573-4800
James.Carroll@skadden.com

Steven C. Sunshine (admitted *pro hac vice*)
Tara L. Reinhart (admitted *pro hac vice*)
Julia K. York (admitted *pro hac vice*)
Sean M. Tepe (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 371-7000
Steve.Sunshine@skadden.com
Tara.Reinhart@skadden.com
Julia.York@skadden.com
Sean.Tepe@skadden.com

*Counsel for Defendant*
*Medicis Pharmaceutical Corp.*

---

**CERTIFICATE OF SERVICE**

I, James R. Carroll, hereby certify that on January 5, 2018, I caused a true copy of the foregoing document to be served by email upon counsel of record as indicated on the Service List attached hereto.

Dated:  January 5, 2018    */s/ James R. Carroll*
                            James R. Carroll

**In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation**

Service List

| **Direct Purchaser Plaintiffs** | **End Payor (Indirect Purchaser) Plaintiffs** |
|---|---|
| Thomas M. Sobol<br>Lauren G. Barnes<br>Jessica R. MacAuley<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>55 Cambridge Parkway, Suite 301<br>Cambridge, MA 02142<br>Tel: (617) 482-3700<br>Fax: (617) 482-3003<br>tom@hbsslaw.com<br>lauren@hbsslaw.com<br>jessicam@hbsslaw.com<br><br>*Liaison and Co-Lead Counsel for Direct Purchaser Class* | Glen DeValerio<br>BERMAN DeVALERIO<br>One Liberty Square<br>Boston, MA 02109<br>Tel: (617) 542-8300<br>Fax: (617) 542-1194<br>gdevalerio@bermandevalerio.com<br><br>*Liaison Counsel for the End-Payor Class* |
| David F. Sorensen<br>Andrew C. Curley<br>Caitlin G. Coslett<br>BERGER & MONTAGUE, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000<br>Fax: (215) 875-4604<br>dsorensen@bm.net<br>acurley@bm.net<br>ccoslett@bm.net<br><br>*Co-Lead Counsel for Direct Purchaser Class* | Steve D. Shadowen<br>Anne Fornecker<br>HILLIARD & SHADOWEN LLP<br>39 West Main Street<br>Mechanicsburg, PA 17055<br>Tel: (855) 344-3928<br>anne@hilliardshadowenlaw.com<br><br>Michael M. Buchman<br>MOTLEY RICE LLC<br>600 Third Avenue, 21st Floor<br>New York, NY 10016<br>Tel: (212) 577-0040<br>mbuchman@motleyrice.com<br><br>*Co-Lead Counsel for the End-Payor Class* |
| Peter Kohn<br>Joseph T. Lukens<br>FARUQI & FARUQI, LLP<br>101 Greenwood Avenue, Suite 600<br>Jenkintown, PA 19046<br>Tel: (215) 277-5770<br>Fax: (215) 277-5771<br>pkohn@faruqilaw.com<br>jlukens@faruqilaw.com | Daniel C. Girard<br>GIRARD GIBBS LLP<br>601 California Street<br>San Francisco, CA 94108<br>Tel: (415) 981-4800<br>Fax: (415) 981-4846<br>dcg@girardgibbs.com |

| | |
|---|---|
| Barry Taus<br>Archana Tamoshunas<br>TAUS, CEBULASH & LANDAU, LLP<br>80 Maiden Lane, Suite 1204<br>New York, NY 10038<br>Tel: (212) 931-0704<br>btaus@tcllaw.com<br>atamoshunas@tcllaw.com<br><br>*Counsel for Plaintiff Rochester Drug Cooperative, Inc.* | Jayne A. Goldstein<br>POMERANTZ GROSSMAN HUFFORD<br>    DAHLSTROM & GROSS LLP<br>1792 Bell Tower Lane, Suite 203<br>Weston, FL 33326<br>Tel: (954) 315-3454<br>Fax: (954) 313-3455<br>jagoldstein@pomlaw.com<br><br>J. Douglas Richards<br>COHEN MILSTEIN<br>88 Pine Street, 14th Floor<br>New York, NY 10005<br>Tel: (212) 838-7797<br><br>Marvin A. Miller<br>MILLER LAW LLC<br>115 S. LaSalle Street, Suite 2910<br>Chicago, IL 60603<br>Tel: (312) 332-3400<br><br>*Executive Committee for the End-Payor Class* |
| **Rite Aid Plaintiffs**<br><br>Barry L. Refsin<br>HANGLEY ARONCHICK SEGAL PUDLIN<br>    & SCHILLER<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 496-7031<br>Facsimile: (215) 568-0300<br>brefsin@hangley.com<br><br>Monica L. Rebuck<br>Eric L. Bloom<br>HANGLEY ARONCHICK SEGAL PUDLIN<br>    & SCHILLER<br>4400 Deer Path Road, Suite 200<br>Harrisburg, PA 17110<br>Telephone: (717) 364-1007<br>Facsimile: (717) 234-3982<br>mrebuck@hangley.com<br><br>*Counsel for Rite Aid Plaintiffs* | **CVS Plaintiffs**<br><br>Monica L. Rebuck<br>Eric L. Bloom<br>HANGLEY ARONCHICK SEGAL PUDLIN<br>    & SCHILLER<br>4400 Deer Path Road, Suite 200<br>Harrisburg, PA 17110<br>Telephone: (717) 364-1007<br>Facsimile: (717) 234-3982<br>mrebuck@hangley.com<br>ebloom@hangley.com<br><br>Barry L. Refsin<br>HANGLEY ARONCHICK SEGAL PUDLIN<br>    & SCHILLER<br>One Logan Square, 27th Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 568-6200<br>brefsin@hangley.com<br><br>*Counsel for Plaintiff CVS Pharmacy, Inc.* |

**Walgreen Plaintiffs**

Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
(305) 373-1000
(305) 372-1861
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

*Counsel for Walgreen Plaintiffs*